UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| ERA Marine Products, Inc., | Civil No. 09-3050 (JRT/FLN) |
| Plaintiff, | |
| v. | **ORDER** & **REPORT AND RECOMMENDATION** |
| Jet Dock Systems, Inc., *et al.,* | |
| Defendants. | |

_____

Vytas M. Rimas for Plaintiff.
Emeric J. Dwyer, F. Thomas Vickers, Gordon D. Kinder for Defendants.
_____

**THIS MATTER** came before the undersigned United States Magistrate Judge on March 19, 2010 on Defendants' Motion to Dismiss Claims of Plaintiff for Failure to State a Claim [#9] and Defendants' Motion to Dismiss Claims of Plaintiff for Lack of Personal Jurisdiction Over Defendants, or, in the Alternative, to Transfer to a Different Venue [#13]. The matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons which follow, this Court recommends that Defendants' motion to dismiss for lack of personal jurisdiction be granted and that Defendants' motion to dismiss for failure to state a claim be denied as moot. Additionally, at the hearing Defendants made an oral motion to strike Plaintiff's supplemental exhibits. (Doc. Nos. 51, 52.) That motion is denied.

I.  BACKGROUND

1

Defendant Jet Dock Systems, Inc., associated corporation Defendant Ocean Innovations, Inc., and Defendants W. Allan Eva III and David T. Faber manufacture floating dock systems (hereinafter collectively referred to as "Defendants"). Jet Dock and Ocean Innovations are Florida corporations. (2d Am. Compl. ¶¶ 2-3.)[1] Eva is an Ohio resident and Faber is a Florida resident. (Eva Decl. ¶ 1 (Doc. No. 17); Faber Decl. ¶ 1; Compl. ¶ 5.) Both Jet Dock and Ocean Innovations are wholly owned by Eva and Faber. (2d Am. Compl. ¶¶ 2-3.) Plaintiff ERA Marine Products, Inc. is a Minnesota corporation. (2d Am. Compl. ¶ 1.)

The Defendants hold multiple patents on various types of floating docking systems. For over six years, Defendants have been plaintiffs in a patent litigation suit against ERA Marine and other defendants in the Northern District of Ohio relating to, among other issues, Jet Dock U.S. Patent Nos. 5,529,013, 5,682,833, 5,931,113, 5,947,050, 6,431,106, 6,526,902, and 6,745,714. (Compl. ¶ 34; *see also Ocean Innovations, Inc. (f/k/a Jet Dock Licensing, Inc.), et al. v. Quarterberth, Inc., et al.*, Case No. 1:03CV0913 (N. D. Ohio) (Adams, J.)).[2] Defendants here allege in the Ohio litigation that Plaintiff's floating dock products infringe Defendants' patents, and the case is still pending final resolution. In the interim, however, Plaintiff filed the case at bar. Plaintiff alleges federal unfair competition claims under the Lanham Act (Count I), Minnesota unfair competition, deceptive trade practices, unlawful trade practices, and consumer fraud claims (Counts II-V), claims for declaratory judgments of patent invalidity and non-infringement with respect to each of the abovementioned patents (Counts VI-XX), and a claim

---

1 Plaintiff filed a second amended complaint without requesting leave of the Court. (Doc. No. 22.) Defendants challenge the validity of this complaint in their memorandum in support of their motion to dismiss for failure to state a claim. (Doc. No. 22.) However, for purposes of this Report and Recommendation, the Court will assume without deciding that the Court would have granted Plaintiff permission to file a second amended complaint.
2 On May 14, 2010, the Honorable John R. Adams issued an order in the Ohio litigation denying Jet Dock's Motion to Enjoin Later-Filed Minnesota Lawsuit. (*See* Doc. No. 65.)

that this case be considered exceptional under 35 U.S.C. § 285 so that Plaintiff may be awarded all costs and fees associated with this lawsuit (Count XXI). (*See generally*, 2d Am. Compl.)[3]

Plaintiff's claims in this case center on allegations that Defendants have contacted Plaintiff's potential customers, dealers, and vendors and have made false and misleading statements that 1) Plaintiff will soon be out of the business of making drive-on docking systems and 2) Plaintiff cannot sell its drive-on dock products without infringing Defendants' patents. (2d Am. Compl. ¶ 35; Ahern Decl. ¶ 5.) Plaintiff alleges that these statements have damaged Plaintiff's business. (Ahern Decl. ¶ 5.) Plaintiff also alleges that Defendants handed out court orders to Plaintiff's potential customers at the Ft. Lauderdale boat trade show on October 29, 2009 – November 1, 2009. (2d Am. Compl. ¶ 35.)

In addition, Plaintiff alleges that on October 30, 2009, Jet Dock litigation and patent counsel, Gordon Kinder, sent a communication to Plaintiff's counsel in Minnesota stating that Plaintiff's display, offer for sale, and/or sale of various docks will subject Plaintiff to liability for patent infringement. (Ahern Decl. ¶ 2.)

For purposes of a motion to dismiss, these substantive allegations must be taken as true. *In re Navarre Corp. Sec. Litig.*, 299 F.3d 735, 738 (8th Cir. 2002). As Defendants now argue that the case should be dismissed for lack of personal jurisdiction, however, the Court is required to delve into the facts alleged in support of and against personal jurisdiction. Jurisdictional facts will be discussed in the analysis below.

As set forth below, the Court recommends that the case be dismissed for lack of personal

---

3  It is worth noting that in the Ohio litigation, where ERA Marine, Inc. is the Defendant, its Amended Answer, Affirmative Defenses and Counterclaims asserts similar declaratory judgment and unfair competition counterclaims against the Plaintiffs there, which are the Defendants here. (Doc. No. 44.)

3

jurisdiction. Therefore, the Court need not reach Defendant's motion to dismiss for failure to state a claim upon which relief may be granted and recommends that it be denied as moot.

## II. STANDARD OF REVIEW

### A. Personal Jurisdiction

To sufficiently allege personal jurisdiction, a plaintiff need only make a prima facie showing of personal jurisdiction over the defendant. *Digi-Tel Holdings, Inc. v. Proteq Telecom*, 89 F.3d 519, 522 (8th Cir. 1996). However, if the defendant challenges personal jurisdiction, the plaintiff has the burden of proving facts supporting personal jurisdiction. *Miller v. Nippon Carbon Co., Ltd.*, 528 F.3d 1087, 1090 (8th Cir. 2008) (citing *Dever v. Hentzen Coatings, Inc.,* 380 F.3d 1070, 1072 (8th Cir. 2004)). "The plaintiff's 'prima facie showing' must be tested, not by the pleadings alone, but by the affidavits and exhibits presented with the motions and opposition thereto." *Id.*

A federal court may exercise jurisdiction "over a foreign defendant only to the extent permitted by the forum state's long-arm statute and by the Due Process Clause of the Constitution." *Nippon Carbon*, 528 F.3d at 1090. However, personal jurisdiction in a case where the Court of Appeals for the Federal Circuit will have appellate jurisdiction is governed entirely by Federal Circuit law – even as to state claims in the same action. *3D Sys., Inc. v. Arotech Labs., Inc.,* 160 F.3d 1373, 1376-77 (Fed. Cir. 1998) ("When analyzing personal jurisdiction for purposes of compliance with federal due process, Federal Circuit law, rather than regional circuit law, applies."); *Northbrook Digital, LLC v. Vendio Svcs., Inc.*, 625 F. Supp. 2d 728, 748 (D. Minn. 2008) (Schiltz, J.); *Caddy Prods., Inc. v. Greystone Intern., Inc.*, No. Civ. 05-301, 2005 WL 3216689, at *1 (D. Minn. Nov. 29, 2005) (Tunheim, J.). Thus, to determine whether the plaintiff has met its burden of proving facts to support personal jurisdiction, the Court must apply Federal Circuit law.

4

The Federal Circuit defers to the state court in its determination of whether the state's long-arm statute extends to the full extent of the Due Process Clause. *3D Sys.*, 160 F.3d at 1376-77. As Minnesota applies its long-arm statute to the fullest extent permissible under due process, the Court need only determine whether exercise of personal jurisdiction in this instance comports with federal due process as interpreted by the Federal Circuit. *Id.*; Minn. Stat. § 543.19; *see also Valspar Corp. v. Lukken Color Corp.*, 495 N.W.2d 408, 411 (Minn. 1992).

"Due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Avocent Huntsville Corp. v. Aten Int'l Co. Ltd.*, 552 F.3d 1324, 1329 (Fed. Cir. 2008) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Consistent with these due process principles, the Federal Circuit has drawn a distinction between "general" personal jurisdiction and "specific" personal jurisdiction. *Trinitec Ind., Inc. v. Pedre Promotional Prods., Inc.*, 395 F.3d 1275, 1279 (Fed. Cir. 2005) ("There are two kinds of personal jurisdiction-specific and general.").

**B.     General Jurisdiction**

In the patent infringement litigation context, the Federal Circuit has held that an assertion of minimum contacts on a general jurisdiction theory requires that the defendant have "continuous and systematic" contacts with the forum state. *Avocent*, 552 F.3d at 1331-32 (quoting *Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1200 (Fed. Cir. 2003) (internal quotation marks and punctuation omitted)).

**C.     Specific Jurisdiction**

With respect to specific jurisdiction, the Federal Circuit employs a three-prong test in which

5

the Court examines minimum contacts by establishing whether: (1) the defendant purposefully directed its activities at residents of the forum, (2) the claim arises out of or relates to those activities, and (3) assertion of personal jurisdiction is reasonable and fair. *Id.* at 1332 (citing *Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356, 1363 (Fed. Cir. 2006)). However, in patent cases seeking declarations of non-infringement and patent invalidity, as the next section will discuss, this test is applied in a particular fashion.

> 1. *Federal Circuit Jurisprudence on Specific Personal Jurisdiction in Patent Cases Seeking Declarations of Non-Infringement and Patent Invalidity*

In a patent case such as the one at bar, where the plaintiff is *not* the patentee but rather a party seeking a declaration that its products do not infringe an existing patent, specific personal jurisdiction is examined by looking solely to the patentee's enforcement activities. As the Federal Circuit explained in *Avocent*,

> In the ordinary patent infringement suit, the claim asserted by the patentee plaintiff is that some act of making, using, offering to sell, selling, or importing products or services by the defendant constitutes an infringement of the presumptively valid patent named in suit. Thus, for purposes of specific jurisdiction, the jurisdictional inquiry is relatively easily discerned from the nature and extent of the commercialization of the accused products or services by the defendant in the forum. In such litigation, the claim both "arises out of" and "relates to" the defendant's alleged manufacturing, using, or selling of the claimed invention.
>
> But in the context of an action for declaratory judgment of non-infringement, invalidity, and/or unenforceability, the patentee is the defendant, and the claim asserted by the plaintiff relates to the wrongful restraint by the patentee on the free exploitation of non-infringing goods such as the threat of an infringement suit. Thus, the nature of the claim in a declaratory judgment action is "to clear the air of infringement charges. Such a claim neither directly arises out of nor relates to the making, using, offering to sell, selling, or importing of arguably infringing products in the forum, but instead arises out of or relates to the activities of the defendant patentee in enforcing the patent or patents in suit. *The relevant inquiry for specific personal jurisdiction purposes then becomes to what extent has the defendant patentee purposefully directed such enforcement activities at residents of the forum*

and the extent to which the declaratory judgment claim *"arises out of* or *relates to"* those activities.

552 F.3d at 1332-33 (emphasis added) (internal citations, quotation marks and footnotes omitted).

    i.    Infringement Letters and Offers to License Are Not Sufficient Enforcement Activities; Other Activities Required

With respect to the "arises out of" portion of the test, the *Avocent* Court explained that fairness concerns require a showing of jurisdiction arising out of enforcement activities above and beyond a typical infringement letter:

> In many patent declaratory judgment actions, the alleged injury arises out of the threat of infringement as communicated in an "infringement letter," and the patentee may have little contact with the forum beyond this letter. While such letters themselves might be expected to support an assertion of specific jurisdiction over the patentee because the letters are "purposefully directed" at the forum and the declaratory judgment action "arises out of" the letters we have held that, based on policy considerations unique to the patent context letters threatening suit for patent infringement sent to the alleged infringer *by themselves* do not suffice to create personal jurisdiction.
>
> This is because to exercise jurisdiction in such a situation would not 'comport with fair play and substantial justice. Principles of fair play and substantial justice afford a patentee sufficient latitude to inform others of its patent rights without subjecting itself to jurisdiction in a foreign forum. A patentee should not subject itself to personal jurisdiction in a forum solely by informing a party who happens to be located there of suspected infringement. Grounding personal jurisdiction on such contacts alone would not comport with principles of fairness. Thus for the exercise of personal jurisdiction to comport with fair play and substantial justice, there must be "other activities" directed at the forum *and related to the cause of action* besides the letters threatening an infringement suit.

552 F.3d at 1333 (emphasis in original) (internal citations and quotation marks omitted).

Finally, with respect to instances in which the Federal Circuit has found jurisdiction where "other activities" (above and beyond cease and desist letters or offers to license the patent at issue)

"relate to" enforcement of patents in the forum state:

> [T]he crux of the due process inquiry should focus first on whether the defendant has had contact with parties in the forum state beyond the sending of cease and desist letters or mere attempts to license the patent at issue there. Where a defendant-licensor has a relationship with an exclusive licensee headquartered or doing business in the forum state, the inquiry requires close examination of the license agreement. In particular, our case law requires that the license agreement contemplate a relationship beyond royalty or cross-licensing payment, such as granting both parties the right to litigate infringement cases or granting the licensor the right to exercise control over the licensee's sales or marketing activities.

*Avocent*, 552 F.3d at 1334 (quoting *Breckenridge*, 444 F.3d at 1363-67). The Court went on to state that "[w]hat the patentee makes, uses, offers to sell, sells, or imports is of no real relevance to the enforcement or defense of a patent, because "the federal patent laws do not create any affirmative right to make, use, or sell anything. *Id.* at 1336 (quoting *Leatherman Tool Group Inc. v. Cooper Indus., Inc.*, 131 F.3d 1011, 1015 (Fed. Cir. 1997)). Consistent with this principle, the Federal Circuit has held that "mere evidence of sales within the forum of products covered by the relevant patent(s) is insufficient to guarantee specific personal jurisdiction over the patentee." *Id.* at 1336. Thus, the Court held that such sales do not constitute such "other activities" as will support at claim of specific personal jurisdiction over a defendant patentee (although such activities may, in the aggregate, justify the exercise of general jurisdiction over the patentee.) *Id.* Only if the defendant patentee purposefully directs *enforcement* activities to the forum state will the activities suffice to support specific jurisdiction (by, for example, entering into an exclusive license relating to the patent's use in the forum state). *Id.*

### III. LEGAL ANALYSIS

**A. Personal Jurisdiction**

   *1. Applicable Law*

The issue of personal jurisdiction in a declaratory action for patent invalidity and non-infringement is intimately related to patent law; therefore, questions concerning personal jurisdiction are governed by Federal Circuit law rather than regional circuit law. *Silent Drive*, 326 F.3d at 1201; *3D Sys.*, 160 F.3d at 1376-77; *Northbrook Digital*, 625 F. Supp. 2d at 748; *Caddy Prods.*, 2005 WL 3216689 at *1; *see also* 28 U.S.C. § 1295 (a)(1). As this is a declaratory action for patent invalidity and non-infringement, the Court will apply Federal Circuit law to determine whether the Plaintiff meets its evidentiary burden by providing affidavits and exhibits sufficient to establish personal jurisdiction over the Defendants. Plaintiff argues that it satisfies the minimum contacts standard on both general jurisdiction and specific jurisdiction theories. The Court will assess each theory in turn.

  *2. General Jurisdiction*

The first issue is whether the Court properly has jurisdiction over Defendants based on a theory of general jurisdiction. "General jurisdiction arises when a defendant maintains 'continuous and systematic' contacts with the forum state even when the cause of action has no relation to those contacts." *Trintec*, 395 F.3d at 1279; *see also Avocent*, 552 F.3d at 1331-32. However, it is also essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws. *Avocent*, 552 F.3d at 1330 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). The purposeful availment requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985); *see also Avocent*, 552 F.3d at 1330.

9

In support of its contention that the Court has general jurisdiction over Defendants, Plaintiff presents the following allegations:

1) Jet Dock claims that it has 85 percent of the cubed drive-on docking market in the United States. Jet Dock claims that it has sold over 10,000 patented docks throughout the United States, yielding over $50 million in dealer and direct sales as of December 2004. (Ahern Decl. ¶ 3.)

2) Jet Dock Systems, Inc. provides an extensive national advertising campaign with proven results. (Ahern Decl. ¶ 8.)

3) Jet Dock offers a "Lifetime Limited Warranty," which includes "I. State law rights: This warranty gives you specific legal rights, and you may also have other rights, which vary, from State to State." (Ahern Decl. ¶ 9, Ex. 6.)

Even if taken as true, with all inferences benefiting the Plaintiff, these allegations serve only to show that Jet Dock has an established national presence. They do not provide any support for the proposition that Jet Dock purposefully availed itself of the privilege of conducting business in Minnesota. Therefore, these allegations cannot support a finding of general jurisdiction.

Next, Plaintiff submits the following allegations:

4) Jet Dock has gathered discovery and documents from a Minnesota lawsuit … in order to damage the business of ERA Marine. (Ahern Decl. ¶ 6.)

5) [ERA Marine Products President Roy Ahern has] received in the mail the Overton's Catalog, which offers Jet Dock products for sale in Minnesota. The on-line version of the Overton Catalog page that offers for sale Jet Dock products in Minnesota is found at http://www.overtons.com/modperl/product/search.cgi. Jet Dock products are advertised and sold in Minnesota directly by Jet Dock by means of its corporate partnership with Overton's, which links its website to Jet Dock's website. (Ahern Decl. ¶ 10, Ex. 8.)

6) On November 30, 2009 at approximately 9 a.m. (CST) [Nancy Jobe] called Jet Dock about Lakeshore Equipment becoming a dealer for them in Minnesota. [Nancy Jobe] was informed that Jet Dock was taking applications for new dealers in Minnesota but that the person specifically handling the new dealer applications was out of town.

> [Nancy Jobe] was referred to Jet Dock's website http://www.jetdock.com/dealer-app.asp. (Jobe Decl. ¶ 3.)

> 7) [Ahern has] attended the Minneapolis Boat Show and saw a drive-on Jet Dock dock assembly display with personal water craft. This display was sponsored by St. Boni Motorsports, located in St. Bonafacius, Minnesota, which was a Minnesota dealer of Jet Dock products. (Ahern Decl. ¶ 7.)

Plaintiff also submits evidence that St. Boni Motorsports ("St. Boni") was a dealer in Minnesota for Jet Dock for at least three years. During that time, Plaintiff provides evidence that Niccum Docks Inc. of Buffalo, Minnesota installed at least 50 Jet Dock docks in Minnesota. (Niccum Decl. ¶¶ 1-3.) However, Defendants provide unrebutted evidence that although St. Boni was previously a reseller of products purchased from Jet Dock, St. Boni has not purchased anything from Jet Dock in more than five years. (Eva Decl. Concerning St. Boni Motorsports ¶ 2 (Doc. No. 43).) Furthermore, Defendants present unrebutted evidence that St. Boni was never a dealer for Defendants, never had a dealer agreement with Defendants, bought product Free On Board ("FOB") Jet Dock's facilities in Cleveland and then shipped the product wherever St. Boni chose to ship. *Id.*

Plaintiff also asserts that "Jet Dock docks have been regularly and continuously sold and assembled throughout Minnesota" but does not provide evidentiary support for that conclusory statement. (Ahern Supp. Decl. ¶ 2.)

Plaintiff's remaining allegations in support of personal jurisdiction relate to the Jet Dock website:

> 8) Jet Dock offers to sell and sells its dock system throughout the United States, including Minnesota via its website at: http://www.jetdock.com/. Potential customers, including those located in Minnesota can purchase Jet Dock products directly from Jet Dock by either calling the JDSI phone number 1-800-538-3625 or by on line chat on Jet Dock's website. (Ahern Decl. ¶ 8.)

9) On the Jet Dock Website a potential Minnesota customer can search by keyword. A keyword search for Minnesota brings up various search results, including for Jet Owner's Manual, various Boat Lifts and Floating Dock Systems, and Dealer Application, Dealer Top 10, Privacy Policy and Warranty. (Ahern Decl. ¶ 9, Ex. 2(2).)

10) The Jet Dock website states: OUR SHOPPING GUARANTEE The JET DOCK SYSTEMS Shopping Guarantee protects you while you shop at JET DOCK SYSTEMS, so that you never have to worry about credit card safety. Period. When you shop at JET DOCK SYSTEMS, you'll be one of 40,000 monthly visitors who have safely shopped with us without credit card fraud. We guarantee that every transaction you make at JET DOCK SYSTEMS will be 100% safe. (Ahern Decl. ¶ 9, Ex. 5.)

11) Jet Dock solicits dealers throughout the United States and Minnesota via its website at: http://www.jetdock.com/dealers.asp  (Ahern Decl. ¶ 7, Exs. 1-3.) A prospective dealer located in Minnesota can complete an on-line application for a Jet Dock dealership on the Jet Dock website. *Id.*

Based on the foregoing facts, Plaintiff makes a "stream-of-commerce" general jurisdiction argument relying primarily on *Viam Corp. v. Iowa Export-Import Trading Co.*, 84 F. 3d 424, 428 (Fed. Cir. 1996).[4] In *Viam*, the Federal Circuit stated: "The analytical tool useful in cases in which the defendant's contacts are the result of *establishing a distribution network in the forum State* for the sale of defendant's products is generally referred to as the 'stream-of-commerce' theory." 84 F. 3d at 427 (Fed. Cir. 1996) (emphasis added); *see also Beverly Hills Fan Co. v. Royal Sovereign Corp.,* 21 F.3d 1558 (Fed. Cir. 1994).  In *Viam*, the Federal Circuit found that a defendant corporation was subject to personal jurisdiction in California under the stream-of-commerce theory when it "knowingly and intentionally exploited the California market through its exclusive distributor's advertising in California, and by establishing channels for providing regular advice in California. [The exclusive licensee] advertised and sold, and is presently advertising and selling,

---

4 Plaintiff also cites to a case from the U.S. District Court for the District of Minnesota, but, as Federal Circuit law

[defendant corporation's] products, including the subject of the [patent at issue], in California, and [defendant corporation] provided [the exclusive licensee] with numerous sales aids which [defendant corporation] knew would be used in California for selling [defendant corporation] products there." 84 F. 3d at 428-29. Furthermore, the defendant corporation in *Viam* had previously submitted to jurisdiction in California when it initiated a lawsuit in California against unrelated parties in an attempt to enforce the same patent at issue in *Viam*. *Id.* at 430.

The facts here do not provide systematic and continuous contacts comparable to *Viam*. *See also Avocent*, 552 F.3d at 1328, 1330 (affirming district court's rejection of general jurisdiction based on the availability of defendant's products for sale in the forum state under a "stream of commerce" theory). In contrast, Plaintiff's evidence in support of personal jurisdiction paints a picture of sporadic contacts by Defendants that cannot fairly be described as a Minnesota distribution network. The Court will examine Plaintiff's evidence in support of its stream of commerce argument below.

First, evidence that Defendants conducted discovery in Minnesota has absolutely no bearing on the issue of personal jurisdiction and is wholly irrelevant to this Court's analysis. Second, the evidence regarding Defendants' products in Minnesota shows, at most, only sporadic contact with Minnesota. The fact that one Overton's catalog received in Minnesota contains an advertisement for Defendants' product and the fact that Defendants' dock was displayed at the Minneapolis Boat Show do not show that Defendants have a distribution network in Minnesota. Further, Defendants provide unrebutted evidence that both Overton's

---

controls this inquiry, the Court may not rely upon regional case law.

catalog and website are merely advertisements directing interested individuals to call Jet Dock directly to order products. (Eva Decl. Concerning St. Boni Motorsports ¶ 5, Ex. 2.)

Next, the fact that St. Boni Motorsports sold Defendants' products for three years and the evidence that 50 Jet Dock docks were installed in Minnesota does not establish minimum contacts or a Minnesota distribution network. The Federal Circuit has held that sales amounting to only two percent of a defendant's total sales is a classic example of sporadic and unsubstantial contacts insufficient to establish general jurisdiction. *Campbell Pet Co. v. Miale,* 542 F.3d 879, 884 (Fed. Cir. 2008). Of the 10,000 (or more) docks Plaintiff alleges Jet Dock claims to have sold through December 2004, 50 docks would account for no more than one half of one percent of Jet Dock sales. Additionally, Defendants provide unrebutted evidence that St. Boni was never an official dealer, that St. Boni simply resold product that it bought FOB from Jet Dock facilities, and that, in any event, St. Boni has not bought any product from Defendants in at least five years. Thus, Plaintiff's paltry evidence of Defendants' products in Minnesota's stream of commerce fails to show the continuous and systematic contacts or established distribution network necessary to establish general personal jurisdiction.

Third, the fact that Jet Dock is currently accepting applications for dealers in Minnesota (via its website or in any other manner) does not establish the necessary showing under *Viam*, which requires contacts resulting from a defendant having *already* established a distribution network in the forum state. 84 F. 3d at 427. In fact, Plaintiff provides no evidence that Defendants have entered into a true dealer agreement with a Minnesota dealer at any time before or after the initiation of this lawsuit.

Fourth, Plaintiff submits no evidence in support of its allegation that Jet Dock offers to

14

license its patents on its website, and Defendants have alleged that no such offer exists on the site. (Eva Decl. Concerning St. Boni Motorsports ¶ 4.) Plaintiff cannot meet its burden on this point.

Finally, although Plaintiff makes an unsupported allegation that Defendants sell product over Defendants' website, Defendants have provided compelling evidence that Defendants do not actually sell products online. In fact, the Defendants' website states, "Jet Dock Systems, Inc. has carefully chosen not to sell products online." (Eva Decl. Concerning St. Boni Motorsports ¶ 3, Ex. 1.) Defendants have provided a print-out of their website showing a sidebar graphic labeled "HOW TO ORDER" that also included an 800 telephone number together with the Defendants' hours of operation. *Id.* An entire page of the site entitled, "How to Order," instructs customers to call Jet Dock's 800 number. (Ahern. Decl. Ex. 4.) Additionally, another page of the website is entitled "Why Don't We Sell Online?" and explains that Jet Dock has "carefully chosen not to sell its products online" because docking systems are highly specialized and only customized service would be appropriate. (Eva Decl., Ex. 1.) This page goes on to state, "… for now and the foreseeable future, online ordering will be strictly avoided," and instructs customers to contact telephone customer service representatives. *Id.*

The Court finds that Plaintiff has provided no evidence that the website includes an interactive functionality that would allow customers to enter a Minnesota address and receive product. Although it is unclear why Defendants tout credit card safety on the page of the website entitled "Jet Dock Visitor Agreement and Privacy Policy," this statement alone does not show that Defendants' website allows for online ordering. Further, the fact that a keyword search for "Minnesota" calls up documents on the Jet Dock website does not establish actual contacts with

15

Minnesota. In sum, it appears to the Court that while Defendants' potential customers may access Defendants' website from Minnesota, the website amounts to nothing more than an advertisement. As the Federal Circuit has held that the ability of a forum's residents to access a defendant's website does not by itself show any persistent course of conduct by the defendant in the forum and does not establish general jurisdiction, the Court must conclude that the existence of Defendants' website (even considered in light of all the evidence submitted by Plaintiff) does not establish general jurisdiction. *Campbell,* 542 F.3d at 884; *see also Trintec,* 395 F.3d at 1281.

For all these reasons, the Court finds that Plaintiff has failed to establish that the Court has general personal jurisdiction over Defendants under a stream-of-commerce theory (or any other theory).

### 3. *Specific Jurisdiction*

The second issue is whether the Court properly has jurisdiction over Defendants based on a theory of specific jurisdiction. The Federal Circuit employs a three-prong test for specific jurisdiction, establishing whether: (1) the defendant purposefully directed its activities at residents of the forum, (2) the claim arises out of or relates to those activities, and (3) assertion of personal jurisdiction is reasonable and fair. *Avocent*, 552 F.3d at 1332 (citing *Breckenridge*, 444 F.3d at 1363). In a patent case such as the one at bar, where the plaintiff is *not* the patentee but rather a party seeking a declaration that its products do not infringe an existing patent, specific personal jurisdiction is examined by looking solely to the patentee's enforcement activities. The relevant inquiry is "to what extent has the defendant patentee purposefully directed such enforcement activities at residents of the forum and the extent to which the

declaratory judgment claim 'arises out of or relates to' those activities." [5] *Avocent*, 552 F.3d at 1332-33. For purposes of this analysis, the Federal Circuit has established that infringement letters sent by a patentee do not qualify as enforcement activities. *Id.* at 1333. A patentee's "mere offer" to license a patent is similarly excluded from the definition of relevant enforcement activities under this analysis. *Id.* at 1334. Furthermore, Defendants' sale of products in Minnesota does not constitute enforcement activities, and any evidence of sales is wholly irrelevant. *Id.* at 1327, 1336 (irrelevant that defendant's products were available for sale in the forum state). An exclusive license relating to a patent's use in the forum state, however, may satisfy the definition of a relevant enforcement activity. *Id.* at 1336.

Here, Plaintiff has failed to allege that the Defendants purposefully directed any activities to the forum that may properly be considered enforcement activities under *Avocent*. Admittedly, Plaintiff has provided unrebutted evidence that Defendants sent an infringement letter to Plaintiff in Minnesota. (Ahern Decl. ¶ 2.) Defendants have further admitted offering to license their patents to Plaintiff in the context of the Ohio litigation. (Eva Decl. Concerning St. Boni Motorsports ¶ 4; *see also* Ahern Decl. ¶ 4.) All evidence of Defendants' sales into the forum is irrelevant, and Plaintiff does not claim to hold exclusive license to Defendants' patents in Minnesota or elsewhere.

Additionally, Plaintiff provides evidence that Defendants have contacted Plaintiff's

---

5 Plaintiff asserts that the test for personal jurisdiction is the same regardless of whether the suit is brought by a declaratory judgment plaintiff against a patentee or it is brought by a patentee against an accused infringer, citing *Viam Corp. v. Iowa Export-Import Trading Co.*, 84 F. 3d 424, 428 (Fed. Cir.1996). The Court agrees only insofar as this assertion applies to the general jurisdiction context. *Viam* specifically addressed the jurisdictional "stream of commerce" theory; the *Viam* court did not make any findings with respect to specific jurisdiction. Therefore, especially since *Avocent* expressly distinguished *Viam* and held that it did not apply to the declaratory judgment/specific personal jurisdiction context, Plaintiff's reliance on *Viam* is inappropriate as applied to specific jurisdiction. *Avocent*, 552 F.3d at 1338-39. This Court will properly apply *Avocent* to the case at bar.

17

potential customers, dealers, and vendors and have made false and misleading statements that 1) Plaintiff will soon be out of the business of making drive-on docking systems and 2) Plaintiff cannot sell its drive-on dock products without infringing Defendants' patents. (2d Am. Compl. ¶ 35; Ahern Decl. ¶ 5.) Plaintiff alleges that these statements have damaged Plaintiff's business. (Ahern Decl. ¶ 5.) However, Plaintiff does not allege that these statements were made in Minnesota or were directed toward Minnesota residents. Plaintiff alleges that Defendants handed out court orders to Plaintiff's potential customers, but states that this happened in Ft. Lauderdale, Florida – not in Minnesota. (2d Am. Compl. ¶ 35.) Therefore, the Court finds that because the Defendants have not purposefully directed enforcement activities toward Minnesota, the Court cannot establish specific personal jurisdiction over Defendants.

**B.     Lanham Act Unfair Competition Claims**

As in *Avocent*, the Plaintiff here makes some reference to an independent basis for personal jurisdiction based upon the effect of Defendants' alleged actions in the forum state. 552 F.3d at 1340; *see also Calder v. Jones,* 465 U.S. 783, 790 (1984). Plaintiff's Second Amended Complaint states: "Defendants caused tortious injury to Plaintiff by act or omission in Minnesota; and/or its causing tortious injury to ERA Marine in Minnesota by an act outside this state committed with the purpose of injuring persons, when it might reasonably have expected that some person would be injured thereby in this state." (2d Am. Compl.¶ 9.) Again, similar to the facts in *Avocent*, Plaintiff's contention most likely relates to Plaintiff's Lanham Act unfair competition claim. 552 F.3d at 1340. Plaintiff's unfair competition claim would certainly fail if the implication of infringement made in the alleged statements and the infringement letter were determined to be true. *Id.*; *see also Breckenridge*, 444 F.3d at 1362.

Accordingly, since these non-patent issues are "intimately linked to patent law," Federal Circuit law regarding due process and specific personal jurisdiction must be applied. *Id.* Since the Court has already determined that Defendants have not conducted sufficient enforcement activities to warrant a finding of specific personal jurisdiction (and since the unfair competition claim refers to the same nucleus of facts), the Court similarly does not have personal jurisdiction over Defendants based on Plaintiff's Lanham Act claim. *Avocent*, 552 F.3d at 1340.

C. **Claim Under 35 U.S.C. § 285**

Plaintiff has made no showing that this case should be deemed exceptional under 35 U.S.C. § 285, and therefore this claim should be dismissed.

D. **Pendent State Law Claims**

Finally, as Plaintiff's claims under federal law should be dismissed, the Court finds that it should decline to exercise jurisdiction over the Plaintiff's pendent state law claims for unfair competition, deceptive trade practices, unlawful trade practices, and consumer fraud. *See, e.g., Avocent*, 552 F.3d at 1340-41 ("…because the district court did not have personal jurisdiction over [Defendant] with respect to the patent and Lanham Act claims, it correctly dismissed [Plaintiff's] state law claim…"). Thus, the Court recommends that Plaintiff's state law claims also be dismissed.

## IV. CONCLUSION

Based on the foregoing, the Court recommends that this case be dismissed in its entirety for lack of personal jurisdiction over any of the Defendants.

## V. ORDER

Based upon all the files, records and proceedings herein, **IT IS HEREBY ORDERED**

19

that Defendant's oral motion to strike be **DENIED**.

## VI. RECOMMENDATION

Based upon all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendants' Motion to Dismiss Claims of Plaintiff for Failure to State a Claim [#9] be **DENIED as moot** and that Defendants' Motion to Dismiss Claims of Plaintiff for Lack of Personal Jurisdiction Over Defendants, or, in the Alternative, to Transfer to a Different Venue [#13] be **GRANTED**.


DATED: June 29, 2010                    *s/ Franklin L. Noel*
                                        FRANKLIN L. NOEL
                                        United States Magistrate Judge


Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before July 13, 2010, written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within fourteen days after service thereof. All briefs filed under the rules shall be limited to 3,500 words. A judge shall make a de novo determination of those portions to which objection is made.

Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed by **July 13, 2010** a complete transcript of the hearing.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.