## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| ERA MARINE PRODUCTS, INC., | Civ. No. 09-3050 (JRT/FLN) |
| Plaintiff, | |
| v. | **ORDER ADOPTING THE REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE** |
| JET DOCK SYSTEMS, INC., OCEAN INNOVATIONS, INC., W. ALLAN EVA, III, and DAVID T. FABER | |
| Defendants. | |

Vytas M. Rimas, **RIMAS LAW FIRM, PLLC**, 18281 Minnetonka Boulevard, Suite A, Minneapolis, MN 55391, for plaintiff.

Emeric J. Dwyer, **MANSFIELD, TANICK & COHEN**, 1700 U.S. Bank Plaza South, 220 South Sixth Street, Minneapolis, MN 55402; F. Thomas Vickers, **VICKERS LAW GROUP CO., LPA**, 1042 Fresno Drive, Westlake, OH 44145; and Gordon D. Kinder, **LAW OFFICE OF GORDON D. KINDER**, 2231 Delamere Drive, Cleveland, OH 44106, for defendants.

On November 2, 2009, ERA Marine Products, Inc. ("ERA"), filed a civil complaint against defendants Jet Dock Systems. Inc., Ocean Innovations, Inc., W. Allan Eva, III, and David T. Faber ("defendants"), alleging violations of federal and state unfair competition law, violations of the Minnesota Deceptive Trade Practices Act, the Minnesota Unlawful Trade Practices Act, and the Minnesota Consumer Fraud Protection Act. (*See generally* Compl., Docket No. 1.) The complaint also asked that the case be considered "exceptional" under 35 U.S.C. § 285, and sought declaratory judgment of

invalidity, non-infringement, and unenforceability of seven patents. (*Id.*) ERA amended its complaint on November 9, 2009 (Docket No. 2), then attempted to amend the complaint again without leave of the Court on December 23, 2009. (Docket No. 22.) Defendants filed motions to dismiss for lack of personal jurisdiction, or in the alternative to transfer venue, (Docket No. 13), and for failure to state a claim (Docket No. 9), on November 24, 2009. The Court referred the motions to dismiss to United States Magistrate Judge Franklin L. Noel on January 22, 2010. (Order, Docket No. 34.) The Magistrate Judge issued a Report and Recommendation on June 29, 2010, recommending that the Court grant defendants' motion to dismiss for lack of personal jurisdiction, and deny as moot defendants' motion to dismiss for failure to state a claim. (Order and Report and Recommendation, Docket No. 66.) ERA filed timely objections. (Pl.'s Objections to Order and Report and Recommendation, Docket No. 67.)

## BACKGROUND[1]

Jet Dock and Ocean Innovations are Florida corporations that manufacture floating dock systems. (Am. Compl. ¶¶ 2-3, Docket No. 22.) Eva is an Ohio resident and Faber is a Florida resident. (Decl. of W. Allan Eva III ("Eva Decl.") ¶ 1, Docket No. 17; Decl. of David T. Faber ("Faber Decl.") ¶ 1, Docket No. 16.) Both Jet Dock and Ocean

---

[1] The Court recites the facts only to the extent necessary to rule on plaintiff's specific objections to the Report and Recommendation. A full explication of facts and circumstances related to this case can be found in the Report and Recommendation. (Docket No. 66.)

Innovations are wholly owned by Eva and Faber. (Am. Compl. ¶¶ 2-3, Docket No. 22.) ERA Marine Products, Inc. is a Minnesota corporation. (*Id*. ¶ 1.)

Defendants hold multiple patents on various types of floating dock systems. Defendants in this case have been plaintiffs in a patent litigation suit against ERA Marine and other defendants in the Northern District of Ohio for the past six years. That litigation relates to U.S. Patent Numbers 5,529,013, 5,682,833, 5,931,113, 5,947,050, 6,431,106, 6,526,902, and 6,745,714. (Compl. ¶ 34, Docket No. 1); *see also Ocean Innovations, Inc., et al. v. Quarterberth, Inc., et al.*, Case No. 1:03cv0913 (N.D. Ohio order denying motion to dismiss May 21, 2010).) The litigation in Ohio alleges that ERA Marine's floating dock products infringe Jet Dock and Ocean Innovations' patents, and is still pending final resolution. ERA filed the present case while awaiting resolution of the initial litigation in Ohio. In this case, ERA alleges federal unfair competition claims under the Lanham Act, violations of state unfair competition law, deceptive trade practices, unlawful trade practices, and consumer fraud claims, claims for declaratory judgments of patent invalidity, non-infringement with respect to each of the above-mentioned patents, and a claim that this case be considered exceptional under 35 U.S.C. § 285 so that ERA may be awarded all costs and fees associated with this lawsuit. (*See generally* Am. Compl., Docket No. 22.)

ERA claims that defendants have contacted its potential customers, dealers, and vendors and made false and misleading statements that: (1) ERA will soon be out of the business of making drive-on docking systems; and (2) ERA cannot sell its drive-on dock

products without infringing defendants' patents. (Am. Compl. ¶ 35, Docket No. 22; Declaration of Roy Ahern ("Ahern Decl.") ¶ 5, Docket No. 31.) ERA alleges that these statements have damaged its business, and also alleges that defendants handed copies of court orders to ERA's potential customers at a Fort Lauderdale boat trade show in 2009. (Am. Compl. ¶ 35, Docket No. 22.) ERA additionally alleges that on October 30, 2009, Greg Kinder, counsel for Jet Dock, sent a communication to ERA's counsel in Minnesota stating that ERA's display, offer for sale, and sale of various docks will subject ERA to liability for patent infringement. (Ahern Decl. ¶ 2, Docket No. 31.)

The Magistrate Judge recommended that the case be dismissed for lack of personal jurisdiction and that defendants' motion to dismiss for failure to state a claim be denied as moot. (Report and Recommendation at 4, Docket No. 66.) ERA filed timely objections on July 13, 2010, arguing that: (1) this Minnesota action is dissimilar from the Ohio action;[2] (2) Federal Circuit law is the only law that applies; (3) Jet Dock had an established presence in Minnesota; (4) ERA has established that defendants sell products under the stream-of-commerce theory; and (5) ERA's supplemental memorandum should be considered. (Pl.'s Objection to Order and Report and Recommendation, Docket No. 67.)

---

[2] ERA does not describe how finding that the Minnesota action is dissimilar from the Ohio action would affect the outcome of this analysis. The Report and Recommendation mentioned the similarity in a footnote and did not rest any legal conclusion on the observation. (Report & Recommendation at 3 n.3, Docket No. 66.) The objection is irrelevant to any substantive issue before the Court.

## DISCUSSION

**I.    STANDARD OF REVIEW**

When, as in this case, a party challenges personal jurisdiction under Rule 12(b)(2), the plaintiff has "the burden of proving by a preponderance of the evidence the facts necessary to establish personal jurisdiction over the defendant." *Pieczenik v. Dyax Corp.*, 265 F.3d 1329, 1334 (Fed. Cir. 2001); (*see also* Mot. to Dismiss Claims of Pl., Docket No. 13.)  The Court must view all facts in the light most favorable to the plaintiff and resolve all factual conflicts in the plaintiff's favor. *Janel Russell Designs, Inc. v. Mendelson & Assocs., Inc.*, 114 F. Supp. 2d 856, 861 (D. Minn. 2000).

Because defendants argued that the case should be dismissed for lack of personal jurisdiction, the Court is required to delve into the facts alleged in support and against personal jurisdiction.[3] *Radaszewski v. Telecom Corp.*, 981 F.2d 305, 310 (8th Cir. 1977) ("[T]hough the motion is captioned under Rule 12(b)(2) . . . the analytical process is the same as that used on a motion for summary judgment.  We look at the facts relevant to the issue of jurisdiction in the light most favorable to [plaintiff], give him the benefit of all reasonable inferences from these facts, and deny the motion to dismiss if the record, viewed in this way, raises any genuine issue of fact material to the issue of jurisdiction.").

---

[3] Plaintiffs filed their second amended complaint without leave of the Court.  Thus, for purposes of this Order the Court is not required to view it as true, and it will supersede the facts and claims set forth in the properly filed amended complaint.

The Court has conducted a *de novo* review of ERA's objections. *See* 28 U.S.C. § 636(b)(1)(C); D. Minn. LR 72.1(c)(2). For the reasons set forth below, the Court overrules ERA's objections, and adopts the Report and Recommendation in its entirety.

## II. PERSONAL JURISDICTION

The Court applies Federal Circuit law because the jurisdictional issue is "intimately involved with the substance of the patent laws." *Akro Corp. v. Luker*, 45 F.3d 1541, 1543 (Fed. Cir. 1995). A federal court may exercise jurisdiction "over a foreign defendant only to the extent permitted by the forum state's long-arm statute and by the Due Process Clause of the Constitution." *Nippon Carbon*, 528 F.3d 1087, 1090 (8th Cir. 2008). However, personal jurisdiction in a case where the Court of Appeals for the Federal Circuit will have appellate jurisdiction is governed entirely by Federal Circuit law – even as to state claims in the same action." *3d Sys., Inc. v. Aarotech Labs, Inc.*, 160 F.3d 1373, 1376-77 (Fed. Cir. 1998) ("[W]hen analyzing personal jurisdiction for purposes of compliance with federal due process, Federal Circuit law, rather than regional circuit law, applies."); *Northbrook Digital, LLC v. Vendio Svcs., Inc.*, 625 F. Supp. 2d 728, 748 (D. Minn. 2008); *Caddy Prods., Inc. v. Greystone Intern., Inc.*, Civ. No. 05-301, 2005 WL 3216689, at *1 (D. Minn. Nov. 29, 2005). The Federal Circuit "defer[s] to the interpretation of a state's long-arm statute given by that state's highest court, particularly whether or not the statute is intended to reach the limit of federal due process . . . ." *3d Sys.*, 160 F.3d at 1377. Minnesota applies its long-arm statute to the fullest extent permissible under due process, thus the Court need only determine whether

exercise of personal jurisdiction in this instance comports with federal due process as interpreted by the Federal Circuit. Minn. Stat. § 543.19; *see also Valspar Corp. v. Lukken Color Corp.*, 495 N.W.2d 408, 411 (Minn. 1992) ("If the personal jurisdiction requirements of the federal constitution are met, the requirements of the long-arm statute will necessarily be met also. Thus, when analyzing most personal jurisdiction questions, Minnesota courts may simply apply the federal case law.").

"Due process requires only that in order to subject a defendant to a judgment *in personam*, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Avocent Huntsville Corp. v. Aten Intl'l Col. Ltd.*, 552 F.3d 1324, 1329 (Fed. Cir. 2008) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

> There are two kinds of personal jurisdiction – specific and general. Specific jurisdiction arises out of or relates to the cause of action even if those contacts are isolated and sporadic . . . General jurisdiction arises when a defendant maintains continuous and systematic contacts with the forum state even when the cause of action has no relation to those contacts.

*Trintec Indus., Inc. v. Pedre Promotional Prod., Inc.*, 395 F.3d 1275, 1279 (Fed. Cir. 2005) (internal quotation marks omitted); *see also Burger King Corp. v. Ruzewicz*, 471 U.S. 462, 472-73 (1985); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-416 (1984).

To sufficiently allege personal jurisdiction a plaintiff need only make a prima facie showing of personal jurisdiction over the defendant. *Digi-Tel Holdings, Inc. v. Proteq*

*Telecom*, 89 F.3d 519, 522 (8th Cir. 1996). However, if the defendant challenges personal jurisdiction, the plaintiff has the burden of proving facts supporting personal jurisdiction. *Miller v. Nippon Carbon Co., Ltd.*, 528 F.3d 1087, 1090 (8th Cir. 2008). "The plaintiff's 'prima facie showing' must be tested, not by the pleadings alone, but by the affidavits and exhibits presented with the motions and opposition thereto." *Id.*

### A. General Jurisdiction

The Court first addresses whether it has jurisdiction over defendants based on a theory of general jurisdiction. "General jurisdiction arises when a defendant maintains continuous and systematic contacts with the forum state even when the cause of action has no relation to those contacts." *Trintec*, 395 F.3d at 1279. The Federal Circuit holds that "in the context of patent infringement litigation . . . an assertion of **general** jurisdiction requires that the defendant have continuous and systematic contacts with the forum state . . . even when the cause of action has no relationship with those contacts. *Avocent*, 552 F.3d at 1331-32. A finding of general jurisdiction over a party requires that there be some act by which the defendant purposefully availed itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. *Id.* at 1330 (quoting *Hanson v. Deckla*, 357 U.S. 235, 253 (1958)). This requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." *Burger King*, 471 U.S. at 475.

To date, ERA has filed three complaints: an initial complaint, an amended complaint, and a second amended complaint filed without leave of the Court. Throughout these filings, ERA has failed to demonstrate continuous and systematic contacts by defendants with the forum state of Minnesota. ERA's allegations include:

1) Defendants sold more than 20 float assemblies in 1993. (Am. Compl. ¶ 14, Docket No. 22.)

2) Defendants sold a number of docks to various people in Florida. (Am. Compl. ¶¶ 15-19.)

3) Defendants' business represents 85% of the cubed drive-on docking market in the United States, and as of December 2004 have sold more than 10,000 patented docks throughout the United States. (2d Am. Compl. ¶ 33.)

4) Defendants make information about licensing and/or patent infringement claims available on its website at http://www.jetdock.com/about-us.asp. Such licensing is available "throughout the United States, including Minnesota . . . ." (2d Am. Compl. ¶ 34.)

5) Jet Dock offers to sell and sells its dock system throughout the United States, including Minnesota, through its website. (Ahern Decl. ¶ 8, Docket No. 31.)

6) Jet Dock offers a "Lifetime Limited Warranty," which includes the statement "I. State law rights: This warranty gives you specific legal rights, and you may also have other rights, which vary, from State to State." (Ahern Decl. ¶ 9, Ex. 6.)

A common refrain in ERA's allegations is that defendants' products, services, or actions occur or *could* occur throughout the United States. By ERA's logic, the fact that a website exists which will ship goods anywhere in the United States creates systematic and continuous contacts with every state. Such a broad reading has not been endorsed by the Federal Circuit. *Avocent*, 552 F.3d at 1337 (holding that direct and indirect sales activity throughout the United States did not render Aten International susceptible to

general jurisdiction in Alabama). At most, and with all inferences benefitting ERA, it has only demonstrated that one can order a Jet Dock product *from* anywhere in the country. No evidence has been introduced to show that people in Minnesota have consistently or systematically done so, nor that Jet Dock has engaged in a course of conduct to consistently or systematically sell or advertise its products in Minnesota. These allegations cannot support a finding of general jurisdiction.

Further, ERA alleges that:

7) Jet Dock has gathered discovery and documents from a Minnesota lawsuit in order to damage the business of ERA Marine. (Ahern Decl. ¶ 6.)

8) ERA Marine Products President Roy Ahern has received the "Overton's Catalong in the mail, which offers Jet Dock products for sale in Minnesota. Jet Dock products are advertised and sold in Minnesota directly by Jet Dock by means of its corporate partnership with Overton's, which links it website to Jet Dock's website. (Ahern Decl. ¶ 10, Ex. 8.)

9) On November 30, 2009, Nancy Jobe called Jet Dock about Lakeshore Equipment becoming a dealer for them in Minnesota. She was informed that Jet Dock was taking applications for new dealers in Minnesota but that the person specifically handling the new dealer applications was out of town. Ms. Jobe was referred to Jet Dock's website at http://www.jetdock.com/dealer-app.asp. (Decl. of Nancy Jobe ¶ 3, Docket No. 30.)

10) Mr. Ahern has attended the Minneapolis Boat Show and saw a drive-on Jet Dock dock assembly display with personal water craft. This display was sponsored by St. Boni Motorsports which was a Minnesota dealer of Jet Dock products located in St. Bonafacius, Minnesota. (Ahern Decl. ¶ 7.)

Despite ERA's allegations that St. Boni Motorsports ("St. Boni") was a "dealer" in Minnesota for Jet Dock for at least three years, defendants provided evidence that St. Boni was merely a reseller of products purchased from Jet Dock, had not purchased

any products from Jet Dock in more than five years, and never had a dealer agreement with Jet Dock. (Eva Decl. ¶ 2, Docket No. 43.) Further, defendants presented unrebutted evidence that St. Boni bought products from Jet Dock Free On Board ("FOB") from Jet Dock's facilities in Cleveland, then shipped the products to Minnesota. (Eva Decl. ¶ 2, Docket No. 43). ERA has not provided evidentiary support for its assertion that "Jet Docks have been regularly and continuously sold and assembled throughout Minnesota." (Supp. Decl. of Roy Ahern in Support of Pl.'s Mem. in Opp. to Mot. to Dismiss ¶ 2, Docket No. 52.) Thus, ERA's objection that Jet Dock has an established presence in Minnesota for purposes of general jurisdiction is unavailing.

Finally, ERA alleges the following in support of personal jurisdiction related to Jet Dock's website:

11) Jet Dock offers to sell and sells its dock system throughout the United States, including Minnesota via its website at: http://www.jetdock.com/. Potential customers, including those located in Minnesota can purchase Jet Dock products directly from Jet Dock by either calling the JDSI phone number 1-800-538-3625 or by on-line chat on Jet Dock's website. (Ahern Decl. ¶ 8.)

12) On the Jet Dock Website a potential Minnesota customer can search by keyword. A keyword search for Minnesota brings up various search results, including for Jet Dock's Owner's Manual, various Boat Lifts and Floating Dock Systems, and Dealer Application, Dealer Top 10, Privacy Policy and Warranty. (Ahern Decl. ¶ 9, Ex. 2.)

13) The Jet Dock website states: OUR SHOPPING GUARANTEE The JET DOCK SYSTEMS Shopping Guarantee protects you while you shop at JET DOCK SYSTEMS, so that you never have to worry about credit card safety. Period. When you shop at JET DOCK SYSTEMS, you'll be one of the 40,000 monthly visitors who have safely shopped with us without credit card fraud. We guarantee that every transaction you make at JET DOCK SYSTEMS will be 100% safe. (Ahern Decl. ¶ 9, Ex. 5.)

14) Jet Dock solicits dealers throughout the United States and Minnesota via its website at: http://www.jetdock .com/dealers.asp. A prospective dealer located in Minnesota can complete an on-line application for a Jet Dock dealership on the Jet Dock website. (Ahern Decl. ¶ 7, Exs. 1-3.)

ERA relies on these allegations to argue for a "stream of commerce" finding of general jurisdiction over defendants, relying primarily on *Viam Corp. v. Iowa Export-Import Trading Co.*, 84 F.3d 424, 428 (Fed. Cir. 1996). In *Viam*, the Federal Circuit found that a patentee who was the subject of a declaratory judgment had established a regular distribution channel through which it purposefully directed its activities. *Viam*, 84 F.3d at 428-29. Relevantly, the Federal Circuit found essential to jurisdiction that "Iowa Export has the **exclusive** right to advertise, market, and distribute products in the United States. *Id.* (emphasis added); *see also Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1362 (Fed. Cir. 1998) ("noting that in light of the patentee's substantial contacts with its **exclusive licensee**, this court determined that the patent was a sufficient nexus between the contacts and the cause of action to establish specific jurisdiction.") (emphasis in original; internal quotations marks and citations omitted); *Akro Corp. v. Luker*, 45 F.3d 1541, 1543, 1548-59 (Fed. Cir. 1995) (finding jurisdiction over patentee who had **exclusively licensed** plaintiff's local competitor to practice the relevant patent). "The analytical tool useful in cases in which the defendant's contacts are the result of establishing a distribution network in the forum State for the sale of defendant's products is generally referred to as the 'stream of commerce' theory." *Viam*, 84 F.3d at 427. The defendant corporation in *Viam* had also

previously submitted to jurisdiction in California when it initiated a lawsuit in California against unrelated parties in an attempt to enforce the same patent. *Id.* at 430.

The facts in this case do not demonstrate systematic and continuous contacts comparable to *Viam*. Jet Dock has not authorized anyone in Minnesota to be an exclusive licensee or dealer of Jet Dock products, nor has it initiated litigation in Minnesota. Jet Dock does not have a network of stores in Minnesota selling its products like the defendant in *Avocent*, where the court nonetheless found insufficient contacts to establish general (or specific) jurisdiction. The Court finds that despite ERA's objection, it has not established a stream-of-commerce in Minnesota by defendants sufficient to justify general personal jurisdiction.

ERA's evidence that defendants conducted discovery in Minnesota is not relevant to the issue of personal jurisdiction. ERA alleged that fifty Jet Docks are in Minnesota, and have relied on unsubstantiated assertions that because Jet Docks are sold throughout the country, there are inevitably other Jet Dock products in Minnesota. This line of reasoning is weak, and no facts have been alleged suggesting that Jet Dock has more than fifty docks in Minnesota, representing, by defendant's own calculations, less than one half of one percent of Jet Dock sales. (2d Am. Compl. ¶ 33) ("JDSI has sold over 10,000 patented docks throughout the United States."). The Federal Circuit has held that sales amounting to only two percent of a defendant's total sales is a classic example of sporadic and unsubstantiated contacts insufficient to establish general jurisdiction. *Campbell Pet Co. v. Miale*, 542 F.3d 879, 884 (Fed. Cir. 2008).

Further, the fact that Jet Dock is currently **accepting** applications for dealers (as opposed to ERA's assertions that Jet Dock has "offered to license its patents to ERA Marine" (Ahern Decl. ¶ 4)), does not establish the necessary showing under *Viam*, which requires contacts resulting from a defendant having **already** established a distribution network in the forum state. *Viam*, 84 F.3d at 427. The Court finds that Jet Dock does not have an established presence in Minnesota sufficient to allow an exercise of general personal jurisdiction over defendants.

Finally, ERA assigns a great deal of importance to the fact that Jet Dock may sell its products online. Jet Dock's website contains a page titled "Why Don't We Sell Online?" which explicitly states that "Jet Dock Systems, Inc. has carefully chosen not to sell its products online." (Eva Decl., Ex. 1.) The information about ordering Jet Dock products directs potential customers to dial a "1-800" number to speak with a representative. (Ahern Decl. ¶ 8, Ex. 4.)

The Federal Circuit holds that the ability of a forum's residents to access a defendant's website does not by itself show any persistent course of conduct by the defendant in the forum and does not establish general jurisdiction. *Campbell*, 542 F.3d at 884. ERA has not provided sufficient evidence to suggest that customers could enter a Minnesota address and receive a Jet Dock product exclusively through interacting with the website. Even if that functionality were demonstrated, ERA has not alleged sufficient additional information to suggest that such activities subject defendants to general jurisdiction in Minnesota.

In sum, the Court agrees with the Magistrate Judge that "while defendants' potential customers may access defendants' website from Minnesota, the website amounts to nothing more than an advertisement." (Report and Recommendation at 16, Docket No. 66.) Thus, the Court concludes that the existence of defendants' website does not establish general jurisdiction.

B.  **Specific Jurisdiction**

The Federal Circuit employs a three-prong test for specific jurisdiction, inquiring whether: (1) the defendant purposefully directed its activities at residents of the forum; (2) the claim arises out of or relates to those activities; and (3) assertion of personal jurisdiction is reasonable and fair. *Avocent*, 552 F.3d at 1332 (citing *Breckenridge Pharm., Inc. v. Metabolite Lab., Inc.*, 444 F.3d 1356, 1363 (Fed. Cir. 2006)).

In a patent case where the plaintiff is **not** the patentee but rather a party seeking a declaration that its products do not infringe an existing patent, specific personal jurisdiction is examined by looking solely at the patentee's enforcement activities. *Avocent*, 552 F.3d at 1332. The relevant inquiry is "to what extent has the defendant patentee purposefully directed such enforcement activities at residents of the forum and the extent to which the declaratory judgment claim 'arises out of or relates to' those activities." *Id.* at 1332-33. "Letters threatening suit for patent infringement sent to the alleged infringer **by themselves** do not suffice to create personal jurisdiction . . . because to exercise jurisdiction in such a situation would not comport with fair play and substantial justice." *Id.* at 1333 (emphasis in original; internal quotation marks omitted).

"Thus, for the exercise of personal jurisdiction to comport with fair play and substantial justice, there must be other activities directed at the forum **and related to the cause of action** besides the letters threatening an infringement suit." *Id.* (emphasis in original; internal quotation marks and alternations omitted); *see also Calder v. Jones*, 465 U.S. 783, 788 (1984) (noting that "[i]n judging minimum contacts, a court properly focuses on 'the relationship among the defendant, the forum, and the litigation.'"). Similarly, a patentee's "mere offer" to license a patent has been excluded from the definition of relevant enforcement action under this analysis by the Federal Circuit. *Avocent*, 522 F.3d at 1334. Further, a defendant's sale of products in Minnesota does not, and would not, constitute enforcement activities, and evidence of such sales are inapposite for this analysis. *See id.* at 1327.

ERA has not alleged sufficient enforcement activities by defendants to provide specific jurisdiction under Federal Circuit law. Unrebutted facts detail that defendants sent an infringement letter to ERA, that defendants have offered to license their patents to ERA in the context of the Ohio litigation, that ERA does not hold exclusive license to defendants' patents in Minnesota or elsewhere, and that defendants have not instituted litigation related to the patents at issue in Minnesota. An infringement letter does not provide specific jurisdiction without "other activities." However, the type of "other activities" contemplated by the Federal Circuit largely involves exclusive licenses, or litigation brought on behalf of the patentee in the proposed forum where specific jurisdiction is challenged. Such activities have not occurred in this case.

Additionally, ERA argues that defendants contacted ERA's potential customers, dealers, and vendors, and made false and misleading statements that ERA will soon be out of the business of making drive-on docking systems, and ERA cannot sell its drive-on dock products without infringing defendants' patents. (Am. Comp. ¶ 35; Ahern Decl. ¶ 5.) ERA alleges that these statements have damaged its business. (Ahern Decl. ¶ 5.) However ERA does not allege that these statements were made in Minnesota or were directed towards Minnesota residents; the statements were allegedly made in Fort Lauderdale, Florida. (Am. Compl. ¶ 35.)

ERA argues that Jet Dock products are advertised and can be used in Minnesota, thus defendants should be subject to specific jurisdiction there. However, "what the patentee makes, uses, offers to sell, sells, or imports is of no real relevance to the enforcement or defense of a patent because the federal patent laws do not create any affirmative right to make, use, or sell anything. *Avocent*, 552 F.3d at 1335 (quoting *Leatherman Tool Group Inc. v. Cooper Indus., Inc.*, 131 F.3d 1011, 1015 (Fed. Cir. 1997)). "Mere evidence of sales within the forum of products covered by the relevant patent(s) is insufficient to guarantee specific personal jurisdiction over the patentee." *Id.* at 1336.

The Court finds that ERA has failed to identify enforcement activities conducted by defendants that were purposefully directed towards Minnesota sufficient to give rise to an exercise of specific jurisdiction.

## III. LANHAM ACT UNFAIR COMPETITION CLAIMS

ERA asserted a claim for unfair competition, arguing it is an independent basis for personal jurisdiction based on the effect of defendants' alleged actions in Minnesota. (Am. Compl. ¶¶ 9-12; Opp. To Mot. to Dismiss for Lack of Personal J. at 8, Docket No. 29. ("Defendants have committed the torts of Federal and Minnesota unfair competition . . . .").)  ERA's unfair competition claim must fail if the implication of infringement made in the alleged statements and the infringement letter are determined to be true.  15 U.S.C § 1125(a)(1) ("Any person who . . . in connection with any goods . . . uses in commerce any . . . **false or misleading fact, or false or misleading representation of fact** . . . .") (emphasis added).

In order to determine whether ERA's unfair competition claim has merit, the Court must determine whether defendants' alleged comments that ERA's products infringe Jet Dock's patents are true.  Since the non-patent issues raised by ERA are "intimately linked to patent law," Federal Circuit law regarding due process and specific personal jurisdiction must be applied.  *Breckenridge Pharm., Inc. v. Metabolite Lab.*, 444 F.3d 1356, 1362 (Fed. Cir. 2006) ("Here, the district court correctly applied Federal Circuit law governing personal jurisdiction to all claims because the question of infringement is a critical factor in determining liability under the non-patent claims."); *see also Silent Drive v. Strong Indus., Inc.,* 326 F.3d 1194, 1201 (Fed. Cir. 2003) (applying regional circuit law to non-patent claims where analysis "with respect to non-patent counts is not intimately linked to patent law.").  The Court has already found that

defendants did not undertake sufficient enforcement activities to warrant a finding of specific personal jurisdiction. Different claims predicated on the same set of facts and circumstances cannot provide the required jurisdiction either.

## IV. PENDENT STATE LAW CLAIMS

Because ERA's claims under federal law are dismissed, the Court declines to exercise jurisdiction over ERA's pendent state law claims for unfair competition, deceptive trade practices, unlawful trade practices, and consumer fraud. *See, e.g.*, *Avocent*, 552 F.3d at 1340-41 ("[b]ecause the district court did not have personal jurisdiction over [Defendant] with respect to the patent and Lanham Act claims, it correctly dismissed [Plaintiff's] state law claim . . . .").

Because the Court determines that none of ERA's claims are independent of the patent law claims, ERA's objection to the application of Federal Circuit law to the pendent state law claims is moot. (Pl.'s Objections to Order and Report and Recommendation at 2-3, Docket No. 67.)

## V. STRIKING OF ERA'S SUPPLEMENTAL MEMORANDUM

ERA's objects to the Magistrate Judge's recommendation to strike its Supplemental Memorandum.[4] (Objections to Order and Report and Recommendation at

---

[4] Plaintiff suggests that "The Court should not have stricken Plaintiff's Supplemental Memorandum (Doc. 60), which was not objected to by Defendants." (Objections to Order and Report and Recommendation at 6, Docket No. 67.) While technically true that defendants did not "object," defendants filed an opposition to the supplemental memorandum stating "Jet Dock
(Footnote continued on next page.)

6, Docket No. 67.) The Court sees no reason to alter from the Magistrate Judge's order striking the supplemental filings. (Order, Docket No. 64.) The parties did not seek or receive permission to submit additional materials to the Court. *See* Local Rule 7.1(g) ("[n]o memoranda of law will be allowed except as provided in these rules."). They will not be considered.

## ORDER

Based on the foregoing of all the records, files, and proceedings herein, the Court **OVERRULES** ERA's objections [Docket No. 67], and **ADOPTS** the Magistrate Judge's Report and Recommendation [Docket No. 66] in its entirety. Accordingly, **IT IS HEREBY ORDERED** that:

1. Defendants' Motion To Dismiss For Lack of Personal Jurisdiction [Docket No. 13] is **GRANTED**.

2. Defendants' Motion To Dismiss Claims of Plaintiff for Failure to State A Claim [Docket No. 9] is **DENIED as moot**.

3. Defendants' Motion To Transfer Venue [Docket No. 13] is **DENIED as moot**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: September 30, 2010      ____s/ John R. Tunheim____
at Minneapolis, Minnesota.          JOHN R. TUNHEIM
                                                 United States District Judge

---

(Footnote continued.)

would not object if the Court were *sua sponte* to strike Plaintiff's Supplemental Memorandum, ECF 60, for being filed out of rule." (Opp. to Pls.' Supp. Mem at 1 n.1, Docket No. 63.)